**FILED**

MAR 2 6 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

DOCKETED

MAR 2 6 200

JUDGE GETTLEMAN

|                                                  |   |                                          |
|--------------------------------------------------|---|------------------------------------------|
| **UNITED STATES OF AMERICA**                     | ) |                                          |
| **ex rel. DERRICK SEARCY**                       | ) | MAGISTRATE JUDGE NOLAN                    |
|                                                  | ) |                                          |
| **Petitioner,**                                  | ) | Case No. 02C 2164                        |
|                                                  | ) |                                          |
| **v.**                                           | ) |                                          |
|                                                  | ) |                                          |
| **MARK A. PIERSON, Warden,**                     | ) |                                          |
| **Hill Correctional Center,**                    | ) | Case Number of State Court               |
|                                                  | ) | Conviction: 95-CR-15668                  |
| **Respondent.**                                  |   |                                          |

**PETITION FOR WRIT OF HABEAS CORPUS**

1.  Name and location of court where conviction entered:

    Circuit Court of Cook County, Illinois (Judge James M. Schreier)

2.  Date of judgment of conviction:

    May 28, 1998

3.  Offenses of which petitioner was convicted (list all counts with indictment numbers, if known):

    First degree murder (in violation of 720 ILCS 5/9-1(a)(1))
    Indictment No. 95-15668

4.  Sentence imposed:

    42 Years

5.  What was your plea?

    Not Guilty

## PART I – TRIAL AND DIRECT REVIEW

1.      What kind of trial did you have?

        Jury Trial


2.      Did you testify at trial?

        No


3.      Did you appeal from the conviction?

        Yes


        (A) If you appealed, give the following:

                (1)  Name of court:

                    Appellate Court of Illinois, First Judicial District, Third Division

                (2)  Result:

                    Judgment Affirmed

                (3)  Date of ruling:

                    August 2, 2000

                (4)  Issues raised:

                        (i) Derrick Searcy was denied his Sixth and Fourteenth Amendment right to confront the witnesses against him when the trial court refused to allow cross-examination of the State's key witnesses—Clarence "Lakefront" Johnson and Michael "Country" Brooks—regarding their bias and motives to testify falsely in order to implicate Mr. Searcy in the murder. The testimony of Brooks and Johnson was the *only* evidence linking Mr. Searcy to the murder of the victim, Edward Bowman. Brooks and Johnson both testified that they witnessed Mr. Searcy murder Mr. Bowman.

Mr. Searcy's Confrontation Clause rights were violated when the court precluded Mr. Searcy from presenting evidence or cross-examining Johnson or Brooks about the fact that the victim was acting as an informant against Brooks for the Chicago Police Department and from cross-examining either witness about their membership in a street gang that was competing with the victim in the local drug trade. The court erroneously barred the requested cross-examination despite the fact that Mr. Searcy established a substantial predicate for the cross-examination, and erroneously required Mr. Searcy to prove with certainty that Johnson or Brooks knew the victim was acting as an informant against Brooks as a precondition of cross-examination.

(ii) The trial court's errors catalogued under (i), *supra*, violated Derrick Searcy's rights under Illinois law to cross-examine adverse witnesses and to present evidence showing that other persons committed the crime with which he was charged. They also denied Mr. Searcy a fair trial.

(iii) Derrick Searcy was deprived of a fair trial when the trial court admitted misleading photographs of the crime scene into evidence after the jury had retired for deliberation although the state had not laid a proper foundation for the photographs.

(iv) The trial court deprived Derrick Searcy of a fair trial and violated Illinois law by refusing to allow Mr. Searcy's expert neurologist to testify unless he prepared a report encompassing his proposed testimony and turned the report over to the State within twenty-four hours.

(vi) The trial court deprived Derrick Searcy of a fair trial and violated Illinois law when it permitted Johnson and Brooks to testify that they saw Mr. Searcy in possession of two handguns on the morning of the crime, and that they saw Mr. Searcy strike the victim with one of those guns.

(vi) The trial court denied Derrick Searcy a fair trial and violated Illinois law when it erroneously admitted an alleged statement by Johnson to the victim's son that Mr. Searcy had killed the victim.

4.  Did you appeal, or seek leave to appeal, to the highest state court?

Yes

(A) If yes, give the:

(1) Result:

Petition for Leave to Appeal denied

(2)     Date of ruling:

November 29, 2000; People v. Searcy, No. 90179 (Ill. Nov. 29, 2000).
Mandate to the Appellate Court of Illinois issued December 21, 2000

(3)     Issues raised:

(i) Derrick Searcy was denied his Sixth and Fourteenth Amendment right to
confront the witnesses against him when the trial court refused to allow cross-
examination of the State's sole claimed eyewitnesses—Clarence "Lakefront"
Johnson and Michael "Country" Brooks—regarding their bias and motives
to testify falsely in order to implicate Mr. Searcy in the murder.  The
testimony of Brooks and Johnson was the *only* evidence linking Mr. Searcy
to the murder of the victim, Edward Bowman.  Brooks and Johnson both
testified that they witnessed Mr. Searcy murder Mr. Bowman

Mr. Searcy's Confrontation Clause rights were violated when the court
precluded Mr. Searcy from presenting evidence or cross-examining Johnson
or Brooks about the fact that the victim had been arrested and was acting as
an informant against Brooks for the Chicago Police Department.  The court
erroneously barred the requested cross-examination despite the fact that Mr.
Searcy established a substantial predicate for the cross-examination, and
erroneously required Mr. Searcy to prove with certainty that Johnson or
Brooks knew the victim was acting as an informant against Brooks as a
precondition of cross-examination.

(ii) the trial court's errors catalogued in (i), *supra*, also violated Mr. Searcy's
right under Article I, Section 8 of the Illinois Constitution to effectively
cross-examine the State's sole claimed eyewitnesses.  In addition, the
appellate court's decision affirming the trial court's limitation on cross-
examination conflicted with another decision of the Appellate Court of
Illinois.

(iii) the trial court's admission of staged prosecution photographs of the crime
scene which were taken years after the relevant time period and which were
likely taken by the jury to rebut critical defense testimony was not harmless
error.

5.     Did you petition the United States Supreme Court for a writ of *certiorari*?

Yes

If yes, give:

(A) date of petition:

February 22, 2001

(B) date *certiorari* was denied:

March 26, 2001; *Searcy v. Illinois*, 532 U.S. 952 (2001)

## PART II – COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

   No

2. With respect to this conviction or sentence, have you filed a petition in **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?

   No

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?

   No

4. **WITH RESPECT TO THIS CONVICTION OR SENTENCE, ARE THERE ANY LEGAL PROCEEDINGS PENDING IN ANY COURT, OTHER THAN THIS PETITION?**

   No

## PART III – PETITIONER'S CLAIMS

1. State <u>briefly</u> every ground on which you claim that you are being held unlawfully. Summarize <u>briefly</u> the <u>facts</u> supporting each ground. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

   (A) Ground one:

   Derrick Searcy was denied his Sixth and Fourteenth Amendment right to confront the witnesses against him when the trial court refused to allow cross-examination of the State's sole claimed eyewitnesses—Clarence "Lakefront" Johnson and Michael "Country"

Brooks—regarding their bias and motives to testify falsely in order to implicate Mr. Searcy in the murder. The testimony of Brooks and Johnson was the *only* evidence linking Mr. Searcy to the murder of the victim, Edward Bowman. Brooks and Johnson both testified that they witnessed Mr. Searcy murder Mr. Bowman.

Mr. Searcy's Confrontation Clause rights were violated when the court precluded Mr. Searcy from presenting evidence or cross-examining Johnson or Brooks about the fact that the victim had been arrested and was acting as an informant against Brooks for the Chicago Police Department. The court erroneously barred the requested cross-examination despite the fact that Mr. Searcy established a substantial predicate for the cross-examination, and erroneously required Mr. Searcy to prove with certainty that Johnson or Brooks knew about the victim's informing against Brooks as a precondition of cross-examination.

On the first day of trial, the state moved *in limine* to prevent Mr. Searcy from informing the jury that the victim had been arrested for cocaine possession three months before the murder, and that the victim had agreed to be an informant for the arresting officer and was working out a deal with the officer under which the victim would act as an informant to implicate Brooks in drug dealings. The defense argued that it should be allowed to bring out this information to support its theory that Brooks murdered the victim and that Brooks and Johnson were framing Mr. Searcy. As an offer of proof, defense counsel submitted a written eyewitness statement from Tonita Mills stating that she saw Brooks murder the victim and saw Johnson drive the getaway car. The defense also proffered testimony from the officer who had arrested the victim confirming that the victim was acting as an informant against Brooks at the time of his murder. (The officer's testimony was later submitted to the court in the form of a sworn affidavit.)

After opening statements, during a recess in the State's case, the trial court granted the State's motion. The court reasoned that Ms. Mills did not state that she heard Brooks tell the victim that he knew the victim had become a police informant when she saw Brooks murder him, and that it "presumed" that the arresting officer would not have revealed the victim's informant status to anyone, particularly Brooks. The court concluded that defense counsel could cross-examine Brooks and Johnson only if they could prove that Brooks or Johnson knew that the victim had been informing against Brooks. The defense objected that, because the victim implicated Brooks as a drug dealer in the presence of the arresting officer and Johnson's neighbor, Clinton Boyd, the court could not presume that Johnson and Brooks did not know about the victim's informant activities. The trial court required defense counsel to *voir dire* Brooks and Johnson outside of the jury's presence, and concluded that it would allow the defense to go into the matter before the jury only if Brooks or Johnson admitted on *voir dire* that they knew the victim was informing on Brooks.

Johnson admitted on *voir dire* that Clinton Boyd was his neighbor and that they had conversations in the months between the victim's arrest and his murder, but he denied discussing the victim's informant activities with Boyd. Brooks also denied knowing that the victim had become an informant against him at the time of the murder, and denied selling

drugs. Brooks became highly agitated during *voir dire*, prompting the judge to caution him to "restrain yourself" and to "[r]emain calm" when answering the questions. Unsatisfied by Brooks' Johnson's limited admissions during *voir dire*, the court barred the defense from cross-examining either witness before the jury regarding the victim's arrest and informant activities against Brooks.

The Illinois Appellate Court's affirmance of the trial court's ruling on these issues is contrary to the holding in *Alford v. United States*, 282 U.S. 687 (1931), which provides that the right to conduct otherwise appropriate cross-examination cannot be conditioned upon proof in advance of what the cross-examination would establish. The appellate court's holding is also contrary to and/or an unreasonable application of the holdings of *Davis v. Alaska*, 415 U.S. 308 (1974), *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), and *Olden v. Kentucky*, 488 U.S. 227 (1988), which hold that a trial court cannot completely preclude a defendant from cross-examining a critical prosecution witness regarding a prototypical form of bias.

2.     Have all grounds raised in this petition been presented to the highest court having jurisdiction?

       Yes

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

       (A)  At preliminary hearing:

            Wilma Scharrer, Jacqueline Ross, Assistant Public Defenders

       (B)  At arraignment and plea:

            Charles G. Murphy, 542 S. Dearborn St., Chicago, IL., Robert Gevirtz, Gevirtz & Born, 181 Waukegan Rd., Suite 306, Northfield, IL. 60093

       (C)  At trial:

            Eric A. Sacks, John F. Ward, Jr., Jenner & Block, One IBM Plaza, Chicago, IL 60611

       (D)  At sentencing:

            Eric A. Sacks, John F. Ward, Jr., Jenner & Block, One IBM Plaza, Chicago, IL 60611

       (E)  On appeal:

R. Douglas Rees, Kathleen M. Banar, John R. Harrington, Jenner & Block, One IBM Plaza, Chicago, IL 60611

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence to be imposed by this conviction?

No.


WHEREFORE, petitioner prays that the Court issue a writ of habeas corpus to have the petitioner brought before it to the end that he may be discharged from his unconstitutional confinement and restraint. Petitioner also asks the Court to grant any other relief to which he may be entitled in this proceeding, and to dispose of the matter as law and justice require.


Signed on: _March 21, 2002_

_____
John F. Ward, Jr.
John R. Harrington
Steven J. Winger
JENNER & BLOCK, LLC
One IBM Plaza
Chicago, Illinois 60611
(312) 222-9350
*Counsel for Petitioner*



**I declare under penalty of perjury that the foregoing is true and correct.**

_____
Petitioner

_____
(I.D. Number)

_____
(Address)


-8-

FILED

# IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

MAR 2 5 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED

MAR 2 6 2002

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. DERRICK SEARCY, | ) ) ) |
| *Petitioner*, | ) ) ) |
| v. | ) ) |
| MARK A. PIERSON, Warden, Hill Correctional Center, | ) ) ) ) |
| *Respondent*. | ) |

02C 2164

Case No. _____

**ORAL ARGUMENT REQUESTED**

JUDGE GETTLEMAN

MAGISTRATE JUDGE NOLAN

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PETITION FOR A WRIT OF HABEAS CORPUS

---

John F. Ward, Jr.
John R. Harrington
Steven J. Winger
JENNER & BLOCK, LLC
One IBM Plaza
Chicago, Illinois 60611
(312) 222-9350

*Counsel for Petitioner*

# **TABLE OF CONTENTS**

Page No.

TABLE OF CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I.     REQUIRING MR. SEARCY TO SHOW THAT THE CHIEF WITNESSES AGAINST HIM WOULD ADMIT TO FACTS DISCREDITING THEIR TESTIMONY AS A PRECONDITION OF CROSS-EXAMINING THEM ABOUT THOSE FACTS DIRECTLY CONTRADICTS THE RULE ESTABLISHED IN *ALFORD v. UNITED STATES* . . . . . . . . . . . . . . . . . . . . . . 11

    II.    BY AFFIRMING THE TRIAL COURT'S DECISION TO FORECLOSE ALL CROSS-EXAMINATION TENDING TO ESTABLISH THE BIAS OF CRITICAL STATE WITNESSES, THE APPELLATE COURT OF ILLINOIS REACHED A DECISION THAT INVOLVES AN UNREASONABLE APPLICATION OF *DAVIS v. ALASKA, DELAWARE v. VAN ARSDALL*, AND *OLDEN v. KENTUCKY* . . . . . . . . . . . . . . . . . . . . . . . . 16

    III.   THE CONFRONTATION CLAUSE VIOLATION WAS NOT HARMLESS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF CASES

*Alford v. United States*, 282 U.S. 687 (1931) ....................................................... 2, 12, 13

*Anderson v. Cowan*, 227 F.3d 893 (7th Cir. 2000) ........................................................ 24

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) ................................................................. 22

*Bui v. DiPaolo*, 170 F.3d 232 (1st Cir. 1999) ............................................................... 14

*Burr v. Sullivan*, 618 F.2d 583 (9th Cir. 1980) ................................................... 13, 19, 21

*Clark v. O'Leary*, 852 F.2d 999 (7th Cir. 1988) ........................................................... 13

*Davis v. Alaska*, 415 U.S. 308 (1974) ................................................................. *passim*

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986) ...................................................... *passim*

*Delaware v. Fensterer*, 474 U.S. 15 (1985) ................................................................. 14

*Denny v. Gudmanson*, 252 F.3d 896 (7th Cir. 2001) ................................................ 9, 24

*Dixon v. Snyder,* 266 F.3d 693 (7th Cir. 2001) ............................................................... 9

*Gordon v. United States*, 344 U.S. 414 (1953) ............................................................. 17

*Kentucky v. Stincer*, 482 U.S. 730 (1987) ................................................................... 11

*Kotteakos v. United States*, 328 U.S. 750 (1946) .......................................................... 22

*Maryland v. Craig*, 497 U.S. 836 (1990) ..................................................................... 11

*Mattox v. United States*, 156 U.S. at 237 (1895) ......................................................... 11

*McCandless v. Vaughn*, 172 F.3d 255 (3d Cir. 1999) .................................................... 19

*O'Neal v. McAninch*, 513 U.S. 432 (1995) ................................................................... 22

*Ohio v. Roberts*, 448 U.S. 56 (1980) .......................................................................... 11

*Olden v. Kentucky*, 488 U.S. 227 (1988) ............................................................. 3, 18, 21

*Pointer v. Texas*, 380 U.S. 400 (1965) ........................................................................ 11

*Reddick v. Haws*, 120 F.3d 714 (7th Cir. 1997) ........................................................... 14

*Redmond v. Kingston*, 240 F.3d 590 (7th Cir. 2001) ..................................... 18, 19, 21, 23

*Smith v. Illinois*, 390 U.S. 129 (1968) ................................................................ 12

*Splunge v. Parke*, 160 F.3d 369 (7th Cir. 1998) ....................................... 15, 22

*Thomas v. Hubbard*, 273 F.3d 1164 (9th Cir. 2002) ....................................... 19

*United States v. DiCaro*, 852 F.2d 259 (7th Cir. 1988) .................................. 20

*United States v. Dombrowski*, 877 F.2d 520 (7th Cir. 1989) *abrogated on other grounds by Taylor v. United States*, 495 U.S. 575 (1990) ...................... 20

*United States v. Foster*, 986 F.2d 541 (D.C. Cir. 1993) .................................. 19

*United States v. Lin*, 101 F.3d 760 (D.C. Cir. 1997) ....................................... 14

*United States v. Lo*, 231 F.3d 471 (9th Cir. 2000) .......................................... 14

*United States v. Lynn*, 856 F.2d 430 (1st Cir. 1988) ....................................... 19

*Williams v. Taylor*, 529 U.S. 362 (2000) ........................................................... 9

*Wilkerson v. Cain*, 233 F.3d 886 (5th Cir. 2000) ................................. 19, 21, 23

## **INTRODUCTION**

Derrick Searcy was convicted of first degree murder in a jury trial for the murder of Edward Bowman and was sentenced to 42 years in prison. (Ex. 1.)[1]  Mr. Searcy has always maintained his innocence. During the trial, the State produced no physical evidence linking Mr. Searcy to the crime. The State's case against Mr. Searcy rested entirely upon the testimony of two purported eyewitnesses—Michael "Country" Brooks and Clarence "Lakefront" Johnson, who claimed to see Mr. Searcy shoot Mr. Bowman after an altercation.

The defense's theory was that Brooks murdered Mr. Bowman with Johnson's assistance. In support of this theory, the defense presented the eyewitness testimony of Tonita Mills. (Ex. 2.) Ms. Mills testified that she witnessed Brooks murder Mr. Bowman and Johnson drive the getaway car. (*Id.* at A-255-59.)

To further support its theory, the defense sought to present evidence that Mr. Bowman had been working as a police informant against Brooks at the time he was murdered, and to cross-examine Brooks and Johnson in front of the jury regarding their knowledge of Mr. Bowman's informant activities. This proposed cross-examination was predicated on Ms. Mills' testimony and on the testimony of a Chicago Police Officer who arrested Mr. Bowman on a narcotics charge approximately three months before his murder. (Ex. 3.) The defense proffered the officer's testimony that during the arrest Mr. Bowman told the officer that Brooks was a drug dealer, and suggested that the officer should arrest Brooks. (Ex. 3 at 2.) Mr. Bowman made these statements in the presence of Clinton Boyd, who was Johnson's neighbor. (*Id.*) At the time of his death, Mr. Bowman was negotiating a deal with the Chicago Police to inform on Brooks. (*Id.*)

---

[1] Citations to the exhibits in the Petitioner's Appendix submitted with this brief are shown as (Ex. ___.)

Despite both the strength of Mr. Searcy's proffer and the centrality of Brooks' and Johnson's testimony to the State's case, the trial court barred Mr. Searcy's counsel from questioning either Brooks or Johnson in front of the jury regarding his knowledge of Mr. Bowman's arrest and his offer to begin working as an informant against Brooks. (Ex. 4 at 80-88.) After requiring Mr. Searcy's attorneys to pose these questions to Brooks and Johnson during separate *voir dires* conducted outside of the jury's presence, the trial court completely foreclosed all inquiry before the jury into these matters. The court denied Mr. Searcy's requested cross-examination solely because Brooks and Johnson denied during *voir dire* that they knew about Mr. Bowman's arrest and informant activities. (*Id.* at 84-85, 96, 99, Ex. 14 at A-15.)

The Appellate Court of Illinois upheld the trial court's decision. Explaining its holding, the court merely noted that a trial court has the discretion to exclude testimony under cross-examination if it is "remote, uncertain or conjectural." (Ex. 5 at 16.) Based on Brooks' and Johnson's denials during *voir dire*, the court concluded that "it was conjectural whether Brooks or Johnson knew what Mr. Bowman had stated to the police or that he was becoming an informant." (*Id.* at 17.) Under these circumstances, the court held that the trial court did not err by precluding the cross-examination sought by Mr. Searcy. (*Id.* at 17, 27.)

In so holding, the Appellate Court of Illinois reached a decision that was both contrary to and involved an unreasonable application of the Supreme Court's Confrontation Clause jurisprudence. By refusing to permit Mr. Searcy to question key prosecution witnesses concerning their bias and motive to testify falsely unless the witnesses first admitted to certain facts during *voir dire* which would confirm the defense's theory, the trial court directly contradicted the rule of law established by *Alford v. United States*, 282 U.S. 687 (1931). The Illinois Appellate Court's affirmance of the trial court's procedure is therefore contrary to clearly established federal law.

Moreover, by precluding all inquiry into the potential bias of critical prosecution witnesses, the trial court violated Mr. Searcy's Confrontation Clause rights as determined by *Davis v. Alaska*, 415 U.S. 308 (1974), *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), and *Olden v. Kentucky*, 488 U.S. 227 (1988). In affirming the trial court's decision, the Appellate Court of Illinois contradicted or unreasonably applied governing federal law as clearly established by *Davis, Van Arsdall*, and *Olden*. In addition, the erroneous and unconstitutional limitations placed upon Mr. Searcy's cross-examination of the State's star witnesses cannot be considered harmless. For these reasons, Mr. Searcy is entitled to habeas relief.

## STATEMENT OF FACTS

Edward Bowman was found shot to death on June 6, 1994 in an alley between Superior and Huron Streets on the west side of Chicago, carrying $1,574 in cash, mostly in small bills, and a pager. (Ex. 6 at W-54; Ex. 7 at A-128-30.) He had been shot six times in the head. (Ex. 8 at X-13.)

At trial, the State presented no physical evidence to link Mr. Searcy to the crime — the State did not recover the murder weapon, did not find any fingerprint evidence, any fiber evidence, or any other tangible evidence linking Mr. Searcy to the murder. The State's only evidence linking Mr. Searcy to Mr. Bowman's murder was the testimony of Brooks and Johnson. Brooks and Johnson testified that they witnessed an altercation between Mr. Searcy and Mr. Bowman and the subsequent shooting. (Ex. 9 at X-138-39; Ex. 10 at A-45-46, A-80.) Although the police questioned them soon after the incident, Brooks and Johnson did not accuse Mr. Searcy of the shooting until almost one year later, when Mr. Searcy was in police custody on an unrelated matter. (Ex. 9 at X-144, X-150-51; Ex. 10 at A-51-52.)

Moreover, the physical evidence that was presented at trial contradicted Brooks' and Johnson's testimony. For example, Johnson testified that, a few hours before the murder, he saw Mr. Searcy strike Mr. Bowman on the left side of his head while holding a gun in his hand. (Ex. 9 at X-113-14.) However, the forensic pathologist who performed the autopsy on Mr. Bowman found no evidence that Mr. Bowman had received such a blow to the head. (Ex. 8 at X-66-69.) In addition, Brooks testified that he was "positive" that Mr. Bowman spoke to him as he lay dying in the alley. (Ex. 10 at A-80-81.) However, both the State's forensic pathologist and the physician called by the defense testified that one of Mr. Bowman's gunshot wounds had lacerated his brainstem and killed him instantly. (Ex. 8 at X-31-32; Ex. 11 at 70-71.)

The defense's theory was that Brooks and Johnson murdered Mr. Bowman and falsely accused Mr. Searcy to shift suspicion away from themselves. To support this theory, the defense sought to present evidence and to cross-examine Brooks and Johnson about the fact that Mr. Bowman had become a police informant against Brooks at the time he was murdered. Immediately before trial, however, the State moved *in limine* to prevent the defense from presenting evidence or cross-examining Brooks and Johnson regarding Mr. Bowman's becoming an informant against Brooks. (Ex. 4 at W-22-23.)

Defense counsel produced a substantial factual predicate for this line of cross-examination. Defense counsel proffered the testimony of Chicago Police Officer Donald Washington. (Ex. 3.) Just three months before his murder, Officer Washington arrested Mr. Bowman on a narcotics charge. Mr. Bowman declared "you've got the wrong guy" when he was arrested, and told Officer Washington that he should instead arrest Brooks, who "sold drugs in the same neighborhood." (*Id.* at 2.) Johnson's neighbor Clinton Boyd was in the same apartment when Mr. Bowman implicated Brooks, and was close enough to have heard the accusation. (*Id.*) In the

-4-

weeks before his murder, Mr. Bowman was attempting to work out a deal with the police to implicate Brooks for narcotics trafficking, but "was killed before the terms of any final deal . . . had been arranged." (*Id.*)

Defense counsel also proffered Tonita Mills' testimony. (Ex. 4 at X-76-80, Ex. 12.) Ms. Mills stated that she repeatedly had purchased narcotics from Brooks and Johnson in the neighborhood. (Ex. 2 at A-254-55, 259.) She also implicated Brooks and Johnson in Mr. Bowman's murder. In a statement proffered by defense counsel and in her subsequent testimony, Mills maintained that on June 6, 1994 she had seen Brooks in an argument with an "older black man" in the alley between Superior and Huron Streets. (Ex. 12 at C-262-63; Ex. 2 at A-253-55.) Mills stated that as she turned to walk away she heard several gunshots. (Ex. 2 at A-257-58.) Immediately afterward, she saw Johnson driving the wrong direction up Huron Street (a one-way street) toward the alley in a black sports utility vehicle. (Ex. 2 at A-259.)

Despite this proffer, the trial court ruled that the defense could not cross-examine Brooks and Johnson about their motive to kill Mr. Bowman unless the defense could prove in advance that they knew that Mr. Bowman was a police informant. (Ex. 4 at X-96-97; Ex. 14 at A-15.) The court explained:

> I'll let you ask, in a *voir dire* way, outside the presence of the jury, Brooks [and Johnson], . . . did you know that Bowman was informing on you. And if he says yes, I did know, then I'll let you get into it before the jury, and I'll let it come out. (Ex. 4 at X-84-85.)

The defense objected to such a high standard, reasoning, "I don't think we can trust [these witnesses] to give us an accurate answer in this case, your Honor." (*Id.* at X-88.) Defense counsel urged that "we're entitled to inference that the jury can make that decision." (*Id.*) The court rejected the argument. (*Id.*)

Not surprisingly, in *voir dire* examinations conducted outside the jury's presence, Brooks and Johnson refused to admit that they knew that Mr. Bowman was acting as an informant. Johnson denied speaking with Boyd about Mr. Bowman's arrest or his informant activities (Ex. 13 at X-103-04) and denied knowing that Mr. Bowman sold drugs (*Id.* at X-103). Brooks denied knowing that Mr. Bowman had become an informant for the police against him and denied selling drugs. (Ex. 14 at A-9-11.)

Some of Brooks' and Johnson's responses during *voir dire* confirmed the defense's theory that Brooks and Johnson could have known that Mr. Bowman was informing against Brooks, and therefore had a motive to kill him and to testify falsely. For example, Johnson admitted that he knew Mr. Bowman, the murder victim, and that he knew Boyd, the man who was present in the apartment when Mr. Bowman implicated Brooks in drug dealing. (Ex. 13 at X-102-03.) Johnson also admitted that Boyd was his neighbor and that they had spoken during the months between Mr. Bowman's arrest and his murder in June 1994. (*Id.* at X-104-05.)

Brooks likewise admitted that he knew Mr. Bowman. (Ex. 14 at A-9.) Moreover, Brooks' demeanor while responding to defense counsel's questions lent credence to the defense's theory, and might well have influenced the jury had the jury been allowed to observe it. Apparently shaken by questioning regarding his knowledge that Mr. Bowman had become an informant against him, Brooks became flustered during *voir dire*. The transcript reveals Brooks' agitated demeanor—the judge had to instruct Brooks to "restrain yourself" and "[r]emain calm" when answering defense counsel's questions. (*Id.* at A-10.)

Nonetheless, the trial court was not satisfied with the factual predicate that defense counsel had established, or the prosecution witnesses' limited admissions in *voir dire*. In the trial court's view, the defense was "unable to prove that Brooks or Country knew that the victim Mr.

Bowman was informing on him," and therefore denied the defense's request to cross-examine Brooks and Johnson regarding Mr. Bowman's informant activities or to introduce evidence that Mr. Bowman had become an informant against Brooks. (Ex. 4 at X-84, 96, 99; Ex. 14 at A-15.)

As a result of the trial court's ruling, Mr. Searcy was barred from cross-examining Brooks and Johnson about their potential motive to kill Mr. Bowman. Mr. Searcy's defense – that Brooks and Johnson killed Mr. Bowman, as Mills had testified, and were falsely accusing Mr. Searcy to shield themselves – was severely hobbled by the restrictions placed on the witnesses' cross-examination. Mr. Searcy was left without any factual basis from which to argue that Johnson's or Brooks' testimony was biased.

In its closing arguments, the prosecution took full advantage of the trial court's exclusionary ruling to attack Mills' testimony and bolster Brooks' and Johnson's credibility:

> You folks should be insulted and offended that [Mills' testimony is] *the best they can do* to support their theory. . . . And how does [Mills' story] support their theory? *Where is Country and Lakefront's motive?* We have all these little shadowy insinuations, all these speculations about drugs . . . How does that tie into Country and Lakefront? They want you to believe Country and Lakefront were killers, all over some dope things. *There is no evidence, folks.*

(Ex. 15 at AA-147-48.) (emphasis added.) Brooks and Johnson, the prosecution argued, were "two of the most credible people that will ever come into a courtroom" and were "heroes." (Ex. 15 at AA-122, 167.) The jury then convicted Mr. Searcy.

On appeal, Mr. Searcy argued that his conviction should be reversed because the trial court violated his right to cross-examination under the Confrontation Clause of the Sixth Amendment. (Ex. 16 at 23-28.) The Appellate Court of Illinois affirmed, upholding the trial court's ruling that the defense could not cross-examine Brooks or Johnson about Mr. Bowman's informant activities unless Brooks and Johnson first admitted, in *voir dire* outside the jury's presence, that they

knew Mr. Bowman had become an informant. Citing only an Illinois state case, the appellate court

ruled that "testimony under cross-examination may be excluded as irrelevant if it is remote, uncertain

or conjectural." (Ex. 5 at 16.) The court concluded that, given the defense's proffer and Brooks' and

Johnson's responses during *voir dire*, "it was conjectural whether Brooks or Johnson knew what Mr.

Bowman stated to the police or that he was becoming an informant," and held that "[w]ithout such

evidence it was not error to refuse to allow defendant to present the police officer's testimony or to

cross-examine Brooks or Johnson on these matters." (*Id.* at 17.)

Mr. Searcy again raised his Confrontation Clause claim in a petition for leave to

appeal to the Illinois Supreme Court. (Ex. 17 at 12-17.) On November 29, 2000, the Illinois

Supreme Court denied Mr. Searcy's petition for leave to appeal. (Ex. 18.) Mr. Searcy also raised

his Confrontation Clause claim to the United States Supreme Court in a petition for certiorari, which

was denied on March 26, 2001. (Ex. 19.)

## STANDARD OF REVIEW

Mr. Searcy's petition is governed by the standards established by 28 U.S.C. § 2254(d),

as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Those

standards provide, in relevant part, that an application for a writ of habeas corpus on behalf of a

person in custody pursuant to the judgment of a state court shall be granted when "the adjudication

of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States." 28

U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established Supreme Court

precedent if the state court "applies a rule that contradicts the governing law set forth in [Supreme

Court] cases," or "confronts a set of facts that are materially indistinguishable from a decision of [the

Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent."

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state court decision involves an "unreasonable application" of clearly established federal law if the state court identifies the correct governing legal rule from Supreme Court precedent but unreasonably applies that rule to the particular facts of the prisoner's case, or if the state court "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. Only U.S. Supreme Court cases constitute the source of "clearly established federal law" as contemplated by Section 2254(d)(1). *See Williams*, 529 U.S. at 412.

Federal courts review state court decisions *de novo* to determine "what is clearly established law as determined by the Supreme Court and whether the state court's decision is 'contrary to' that precedent." *Denny v. Gudmanson*, 252 F.3d 896, 900 (7th Cir. 2001). When analyzing a state court decision under the "unreasonable application" provision of § 2254(d)(1), the court defers to reasonable state court applications of governing federal law. *See id.*; *Dixon v. Snyder*, 266 F.3d 693, 700 (7th Cir. 2001). The court must issue a writ of habeas corpus if it finds that the state court decision is incorrect and objectively unreasonable under governing Supreme Court precedent. *Williams*, 529 U.S. at 411; *Dixon*, 266 F.3d at 700.

## ARGUMENT

This court should grant Mr. Searcy's petition for habeas corpus for two reasons. First, by affirming the trial court's refusal to allow Mr. Searcy to cross-examine Brooks and Johnson regarding their knowledge of Mr. Bowman's arrest or informant activities unless Brooks or Johnson first admitted such knowledge during *voir dire*, the Appellate Court of Illinois applied a rule that is directly contrary to *Alford*. *Alford* squarely holds that a defendant must be allowed to conduct

exploratory cross-examination of an adverse witness, even if the defendant cannot prove in advance exactly what answers the witness will provide.

Second, by affirming the trial court's decision to preclude Mr. Searcy completely from cross-examining critical State witnesses regarding a plausible source of bias, the Appellate Court of Illinois applied a rule that is an unreasonable application of governing federal law, as clearly established by *Davis*, *Van Arsdall*, and *Olden*. As noted, the Appellate Court of Illinois affirmed the trial court's refusal to allow the proposed cross-examination on the ground that it was "speculative" or "conjectural." Its decision cannot be reconciled with the holdings of *Davis*, *Van Arsdall*, and *Olden*, which provide that a trial court's discretion to limit "marginally relevant" cross-examination cannot be extended to justify the total preclusion of cross-examination into the bias of critical State witnesses under circumstances like those presented here.

Due to the unconstitutional restrictions placed upon his cross-examination, Mr. Searcy was prevented from effectively impeaching the State's star witnesses against him, and from making an adequate record before the jury to support his theory of defense. Given the pivotal nature of Brooks' and Johnson's testimony, and the strong likelihood that the proposed cross-examination would have substantially diminished the State's case, the violation of Mr. Searcy's Confrontation Clause rights was not harmless. For all of these reasons, Mr. Searcy is entitled to habeas relief.

I.    **REQUIRING MR. SEARCY TO SHOW THAT THE CHIEF WITNESSES AGAINST HIM WOULD ADMIT TO FACTS DISCREDITING THEIR TESTIMONY AS A PRECONDITION OF CROSS-EXAMINING THEM ABOUT THOSE FACTS DIRECTLY CONTRADICTS THE RULE ESTABLISHED IN *ALFORD v. UNITED STATES*.**

The Confrontation Clause protects defendants' right to an effective cross-examination of witnesses against them.[2] *See Kentucky v. Stincer*, 482 U.S. 730, 736 (1987) (emphasizing that cross-examination is "a primary interest" protected by the Confrontation Clause) (quotation omitted); *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) ("The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination") (quotation omitted). The right to effective cross-examination is integral to the adversary system and the reliable determination of truth in a criminal proceeding. *See Maryland v. Craig*, 497 U.S. 836, 845 (1990) ("The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact."). *Stincer*, 482 U.S. at 736 ("cross-examination is the 'greatest legal engine ever invented for the discovery of truth'") (quotation omitted).

The Supreme Court has recognized that constitutionally effective cross-examination involves more than the ability to test a witness' perceptions and memory, but also requires the ability to ask questions designed to expose "a witness' motivation in testifying," *Davis*, 415 U.S. at 316-17, and to "draw out discrediting demeanor to be viewed by the factfinder," *Ohio v. Roberts*, 448 U.S. 56, 63 n.6 (1980); *see also Mattox v. United States*, 156 U.S. 237, 242-43 (1895) (cross-examination affords the jury an opportunity to "judge by [the witness's] demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."). Witness bias should be "subject

_____

[2] The Confrontation Clause has been held to be incorporated into the Fourteenth Amendment and therefore applicable to the states. *Pointer v. Texas*, 380 U.S. 400, 403 (1965).

to exploration at trial" because it "is 'always relevant as discrediting the witness and affecting the weight of his testimony.'" *Davis*, 415 U.S. at 316 (quotation omitted).

In *Alford*, the Supreme Court held that the right to conduct otherwise appropriate cross-examination cannot be conditioned upon proof in advance of what the cross-examination would establish. 282 U.S. at 692.[3] The defendant in *Alford* sought to cross-examine a government witness concerning his current residence because, *inter alia,* defense counsel had "reason to believe" that the witness was currently "in the custody of the Federal authorities," and counsel wanted to bring that information out "for the purpose of showing whatever [pro-prosecution] bias or prejudice [the witness] may have." *Id.* at 689. The trial court sustained an objection by the government and barred defense counsel from asking the witness where he currently lived. The Court of Appeals for the Ninth Circuit affirmed, reasoning that defense counsel had failed to articulate an appropriate purpose for the proposed cross-examination: ("counsel for the appellant desired to discredit the witness, without . . . in any way connecting the expected answer with a matter on trial . . . [C]ounsel . . . indicated that the proposed question was merely in pursuit of a fishing expedition by which he hoped to discredit the witness." *Id.* at 691.)

The Supreme Court reversed. The Court noted that one of the permissible purposes of cross-examination is to bring out facts "tending to discredit the witness by showing that his testimony in chief was untrue or biased." *Id.* at 692. The Court held that a defendant had the right to pose *exploratory* questions to a witness, and it squarely rejected the claim that otherwise

---

[3] Although *Alford* did not expressly rely on the Confrontation Clause, the Supreme Court has stated that "the constitutional dimension of our holding in *Alford* is not in doubt." *Davis*, 415 U.S. at 318 n.6 (1974). *See also Smith v. Illinois*, 390 U.S. 129, 132-33 (1968) (relying on *Alford* in holding that a particular limit upon the scope of cross-examination violated a defendant's Confrontation Clause rights).

appropriate cross-examination may be precluded on the ground that the defense counsel cannot

identify in advance what answers the proposed cross-examination will yield:

> Counsel often cannot know in advance what pertinent facts may be
> elicited on cross-examination. For that reason it is necessarily
> exploratory; and the rule that the examiner must indicate the purpose
> of his inquiry does not, in general, apply. *It is the essence of a fair
> trial that reasonable latitude be given the cross-examiner, even
> though he is unable to state to the court what fact a reasonable cross-
> examination might develop. . . . To say that prejudice can be
> established only by showing that the cross-examination, if pursued,
> would necessarily have brought out facts tending to discredit the
> testimony in chief, is to deny a substantial right and to withdraw one
> of the safeguards essential to a fair trial.*

*Id.* at 692 (emphasis added). The Court held that the trial court committed prejudicial error by

"cut[ting] off in limine all inquiry on a subject with respect to which the defense was entitled to a

reasonable cross-examination." *Id.* at 694.[4]

The rule applied by the trial court in Mr. Searcy's case and affirmed by the Illinois

Court of Appeals cannot be reconciled with *Alford*. As a condition for allowing Mr. Searcy's counsel

to question Brooks and Johnson regarding their knowledge of the victim's arrest and his status as an

informant, the trial court required Mr. Searcy's counsel to prove during *voir dire* that Brooks and

Johnson would admit to knowing those facts. (Ex. 4 at X-84-85, 96-97, 99; Ex. 14 at A-15.)

Affirming the procedure adopted by the trial court, the Appellate Court of Illinois reasoned that the

trial court's refusal to allow the cross-examination after Brooks and Johnson's denials during *voir*

*dire* was a permissible exercise of the trial court's discretion to limit inquiry into "speculative" or

"conjectural" matters. (Ex. 5 at 16.)

---

[4] As several lower federal courts have noted, *Alford* establishes a constitutional rule that a
defendant's right to cross-examine a witness for bias may not be conditioned upon the defense's
ability to prove its theory of bias in advance. *See, e.g., Clark v. O'Leary*, 852 F.2d 999, 1006 (7th
Cir. 1988); *Burr v. Sullivan*, 618 F.2d 583, 587 (9th Cir. 1980).

*Alford* flatly rejects such reasoning. Under *Alford*, the Supreme Court held that a trial court violates the Confrontation Clause when it bars defense counsel from conducting appropriate cross-examination (such as questioning tending to establish the witness' bias) solely on the ground that the defendant cannot show in advance what facts the cross-examination might reasonably develop.

This is not to say, however, that the governing Confrontation Clause standards established by the Supreme Court categorically preclude a trial court from placing any limits upon defense counsel's inquiry into the potential bias of a prosecution witness. The Supreme Court has recognized that the Confrontation Clause guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (*per curiam*) (emphasis in original). Accordingly, the Court has ruled that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based upon concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679. Applying these standards, some lower federal courts have upheld a trial court's limitation on cross-examination where the examiner failed to lay any foundation for the proposed line of inquiry, *see e.g., Reddick v. Haws*, 120 F.3d 714, 717 (7th Cir. 1997), *United States v. Lin*, 101 F.3d 760, 767-68 (D.C. Cir. 1997), or where the prohibited cross-examination was unduly speculative and the defendant had been permitted to inquire into the potential bias of the witness at issue through some other line of cross-examination. *See e.g. United States v. Lo*, 231 F.3d 471, 482-83 (9th Cir. 2000); *Bui v. DiPaolo*, 170 F.3d 232, 242-46 (1st Cir.

1999).[5] These considerations do not justify the Illinois Appellate Court's decision in Mr. Searcy's case for two reasons.

First, Mr. Searcy's counsel proffered a substantial factual predicate for the proposed line of questioning at issue. Mr. Searcy's theory of Brooks' and Johnson's potential bias was supported by the affidavit of Officer Washington, the eyewitness testimony of Tonita Mills, and some of the admissions made by Brooks and Johnson on *voir dire*. Specifically, defense counsel's proffer included: (1) Officer Washington's statement that Mr. Bowman implicated Brooks as a drug dealer; (2) Mills' testimony confirming that Brooks, as well as Johnson, sold drugs in the neighborhood; (3) the officer's statement that Mr. Bowman had begun to work out a deal with the Chicago Police to implicate Brooks in narcotics dealing; (4) the Officer's statement that Mr. Bowman accused Brooks of dealing drugs in the presence of Johnson's neighbor, Clinton Boyd; (5) Johnson's admission that he knew Boyd, and had spoken with him before the murder; (6) Johnson's and Brooks' admission that they knew Mr. Bowman; and (7) Mills' testimony that she witnessed Brooks murder Mr. Bowman with Johnson's assistance. Taken together, this evidence suggests that Johnson and Brooks were drug dealers, that Mr. Bowman was in the process of informing on Brooks at the time of the murder, and that Brooks and Johnson could have readily learned that fact from Johnson's neighbor, Boyd. At a minimum, this proffered evidence established a good-faith basis for the line of questioning which the defense sought to conduct, and demonstrated the relevance of the proposed questioning. By refusing to permit Mr. Searcy's counsel to ask Brooks or Johnson about their knowledge of Mr. Bowman's informant activities, the trial court did more than merely require Mr.

---

[5] *Cf. Splunge v. Parke*, 160 F.3d 369, 375 (7th Cir. 1998) (holding that the trial court was entitled to limit further cross-examination of a State witness as to her expectation of receiving a benefit from the State in exchange for her testimony after the defense counsel was allowed to ask the witness in the jury's presence whether she thought she could receive a reward, and she testified that she didn't know.)

Searcy to establish a factual predicate for the proposed cross-examination. Rather, it required him *affirmatively to prove in advance* that the questioning would actually elicit the facts that the defense hoped to establish. This is precisely the kind of requirement rejected by *Alford*.

Second, unlike the defendants in the lower federal court cases discussed above, Mr. Searcy was *completely* precluded from bringing the issue of Johnson and Brooks' bias before the jury. While Mr. Searcy's attorneys were permitted to impeach Brooks and Johnson through other means—for example, by questioning them regarding their previous convictions and prior inconsistent statements—such questioning tended only to undermine Brooks and Johnson's credibility generally and not to establish their *motives* to testify falsely against Mr. Searcy. The questions which Mr. Searcy's attorneys were prevented from asking were the *only* questions which had the potential to expose such motives.

## II.  BY AFFIRMING THE TRIAL COURT'S DECISION TO FORECLOSE ALL CROSS-EXAMINATION TENDING TO ESTABLISH THE BIAS OF CRITICAL STATE WITNESSES, THE APPELLATE COURT OF ILLINOIS REACHED A DECISION THAT INVOLVES AN UNREASONABLE APPLICATION OF *DAVIS v. ALASKA*, *DELAWARE v. VAN ARSDALL*, AND *OLDEN v. KENTUCKY*.

A criminal defendant states a violation of the Confrontation Clause "by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness. . . ." *Van Arsdall*, 475 U.S. at 680. A trial court impermissibly truncates a defendant's cross-examination when it bars him from "expos[ing] to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis v. Alaska*, 415 U.S. 308, 318. While trial judges have the discretion to place "reasonable limits" on the scope of cross-examination, *see Van Arsdall*, 475 U.S. at 679, such discretion "cannot be expanded to justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony."

*Gordon v. United States*, 344 U.S. 414, 423 (1953). The defendant must be allowed to question key prosecution witnesses about their potential biases and motives so that the jury can "make an informed judgment as to the weight to place on . . . testimony which provide[s] a crucial link in the proof . . . of [the defendant's alleged] act." *Davis*, 415 U.S. at 317 (internal quotation omitted).

The Supreme Court repeatedly has invalidated limits placed on the scope of cross-examination of critical prosecution witnesses when those limits completely foreclosed questioning tending to establish witness bias. Most notably, in *Davis*, a defendant sought to cross-examine a crucial State witness regarding the fact that the witness was on probation for a juvenile offense. The defense sought to raise this matter not to impeach the witness' character generally, but in order to argue that the witness' fear of possible jeopardy to his probation (and his consequent desire to shift all suspicion from himself) might have influenced him to incorrectly identify the defendant as the perpetrator of the crime and to testify against the defendant. Relying on a State statute which prohibited the admission of juvenile adjudications as evidence in court, the trial court barred the defense from raising the matter of the witness' probationary status during cross-examination. The defendant was convicted, and the Alaska Supreme Court affirmed. The Supreme Court reversed, reasoning that

> [w]hile counsel was permitted to ask [the witness] whether he was biased, counsel was unable to make a record from which to argue why [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness . . . on these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.

*Id.* at 318.

The Court held that the restrictions imposed by the trial court denied the defendant the right to effective cross-examination guaranteed by the Sixth and Fourteenth Amendments. *Id. See also Van Arsdall*, 475 U.S. at 679 (holding that "by . . . cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated the defendant's rights secured by the Confrontation Clause."); *Olden* 488 U.S. at 231-33 (holding that the trial court violated the defendant's Sixth Amendment rights by refusing to allow the defendant to bring out facts from which jurors might reasonably have inferred that the witness had a motive to concoct false testimony against the defendant).

Moreover, courts are particularly likely to find a Confrontation Clause violation where the defendant is wholly precluded from inquiring into the potential bias of the star prosecution witness whose testimony is virtually the only evidence linking the defendant to the crime. *See Davis*, 415 U.S. at 317-20; *Olden*; 488 U.S. at 231-33. Applying *Davis* and *Olden*, the Seventh Circuit recently reversed the district court's denial of habeas relief where the state trial court had refused to permit the defendant's counsel to cross-examine the key State witness about her motive to fabricate her testimony against the defendant. *See Redmond v. Kingston*, 240 F.3d 590, 591-93 (7th Cir. 2001).

In *Redmond*, the defendant was on trial for statutory rape, and the defense counsel wanted to cross-examine the alleged victim (the principal witness against the defendant) regarding her having previously concocted a story about being raped by an unidentified man, and later admitting that she had fabricated the story to get her mother's attention. The court rejected the state courts' conclusion that the prior false charge of forcible rape was cumulative of other evidence bearing on the alleged victim's credibility, reasoning that "none of the other evidence either involved

-18-

a false charge of being sexually assaulted or furnished a motive for such a charge." *Id.* at 591. Moreover, the court stressed that the evidence of the false charge would have "supplied a powerful reason for disbelieving [the alleged victim's] testimony . . . by showing that she had a motive for what would otherwise be an unusual fabrication." *Id.* at 592-93 (citing *Van Arsdall*, 475 U.S. at 679-80). Noting that the alleged victim's testimony was "virtually the only evidence of the [defendant's] guilt that the prosecution had," the court concluded that the alleged victim's credibility was the "central issue in the case," and held that the state courts had unreasonably applied the Supreme Court's confrontation doctrine by precluding cross-examination into the vital issue of the star witness' motive to lodge a false charge against the defendant. *Id.* at 591-92. *See also Wilkerson v. Cain*, 233 F.3d 886, 890-91 (5th Cir. 2000) (vacating lower court's denial of habeas corpus petition where a murder defendant was convicted without physical evidence and where his cross-examination regarding the bias of the sole purported eyewitness to the crime was improperly limited); *McCandless v. Vaughn*, 172 F.3d 255, 266 (3d Cir. 1999); *United States v. Foster*, 986 F.2d 541, 543 (D.C. Cir. 1993); *Burr*, 618 F.2d at 586-88; *Cf. Thomas v. Hubbard*, 273 F.3d 1164, 1178 (9th Cir. 2002) ("Where a defendant's guilt hinges largely on the testimony of a prosecution's witness, the erroneous exclusion of evidence critical to assessing the credibility of that witness violates the Constitution."); *United States v. Lynn*, 856 F.2d 430, 433 (1st Cir. 1988).

Under these standards, it is clear that the Illinois Appellate Court's decision contravenes the constitutional rule established by *Davis*, *Van Arsdall*, and *Olden*. Several considerations compel this conclusion. First, the proposed cross-examination which Mr. Searcy was prevented from conducting concerned a "prototypical form of bias"—namely, two witness' potential motivation to testify falsely against him. As noted, a defendant's right to cross-examine adverse witnesses as to such matters is protected by the Confrontation Clause. *See Davis*, 415 U.S. at 418.

In addition, the trial court in this case foreclosed *all* inquiry into the issue of Brooks' and Johnson's motives to testify falsely against Mr. Searcy. This is not a case where the defense was given reasonable latitude to bring out these issues through another line of questioning, rendering the prohibited cross-examination cumulative or superfluous.[6] Absent the prohibited cross-examination, Mr. Searcy's attorneys were forced to conduct a relatively "generic" cross-examination which focused on three themes: (1) certain inconsistencies between the witnesses' trial testimony and statements which they had previously made to the police or to the grand jury (Ex. 13 at X-160-68; Ex. 14 at A-59-67); (2) the witnesses' prior criminal records (Ex. 13 at X-149; Ex. 14 at A-84-85); and (3) their delay in reporting Mr. Searcy to the police. (Ex. 13 at X-149-52.) While these matters impeached Brooks' and Johnson's credibility generally, none of them suggested a *motive* for either man to testify falsely. Therefore, in denying the requested cross-examination, the trial court completely removed the issue of Brooks' and Johnson's bias from the jury's consideration, robbing the jury of the ability to make a fully informed judgment on the issue of Johnson's and Brooks' credibility. As *Davis*, *Olden*, *Van Arsdall*, and a host of lower court cases (e.g. *Redmond*) make clear, such a sweeping restriction on cross-examination violates the Confrontation Clause.[7] Contrary to the Illinois

---

[6] *See e.g. United States v. DiCaro*, 852 F.2d 259, 261-62 (7th Cir. 1988). *See generally United States v. Dombrowski*, 877 F.2d 520, 523-24 (7th Cir. 1989), *abrogated on other grounds by Taylor v. United States*, 495 U.S. 575 (1990.) ("Relatively minor limitations on cross-examination do not generally impinge upon sixth amendment rights where the issue counsel sought to illuminate through cross-examination has been adequately explored elsewhere.")

[7] Indeed, the Confrontation Clause violation at issue in this case is even more egregious than the violation identified in *Davis*. Not only was Mr. Searcy prevented from "expos[ing] to the jury facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness[es]," he was denied the opportunity to pose a single question going to the particular bias at issue. *Davis* at 318. The *Davis* defendant was at least allowed to bring the "suggestion" of the witness' bias to the attention of the jury by asking the witness in the jury's presence whether he was uncomfortable that the stolen property was discovered near his house and whether he was ever worried that the police might have suspected that he had committed the crime. This enabled the jury to "observe the witness' demeanor and pass on his credibility" while he responded to the examiner's

Appellate Court's conclusion, such a restriction cannot be justified as a legitimate exercise of the trial court's discretion.

Moreover, when the Illinois Appellate Court's affirmance of the trial court's decision is considered in light of other factors present in this case, its impropriety becomes even more apparent. First, the cross-examination which Mr. Searcy was barred from conducting tended to establish the bias of the prosecution's star witnesses whose testimony was the *only* evidence directly tying Mr. Searcy to the murder. As such, Brooks' and Johnson's credibility was the "central issue" in the case, *Redmond*, 240 F.3d at 592; *accord Davis*, 415 U.S. at 319; *Olden*, 488 U.S. at 229, and Mr. Searcy should have been given the "maximum opportunity" to test their credibility. *Burr*, 618 F.2d at 587; *accord Redmond*, 240 F.3d at 591-92; *Wilkerson*, 233 F.3d at 891. Mr. Searcy was denied such an opportunity.[8]

Finally, the prosecution exacerbated the prejudicial impact of the trial court's restrictions on Mr. Searcy's cross-examination of Brooks and Johnson by repeatedly emphasizing the credibility of each witness during closing argument, and by expressly drawing attention to Mr. Searcy's inability to suggest a plausible motive for either witness to lie. As their continual remarks during closing argument suggest, the centrality of Brooks and Johnson's credibility to the State's case was not lost on the prosecutors. In addition to making a mantra out of the issue of Brooks' and Johnson's credibility (proclaiming at one point that Johnson and Brooks were "probably two of the

---

question. *Id.* Mr. Searcy was not given a similar opportunity.

[8] In addition, Mr. Searcy's inability to raise the issue of Johnson's and Brooks' bias effectively emasculated the cross-examination that he was permitted to conduct. Without the prohibited cross-examination, Mr. Searcy was left with no ground upon which to argue that either witness had a motive to lie, and "on the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness[.]" *Davis*, 415 U.S. at 318; *Wilkerson*, 233 F.3d at 891.

most credible people that will ever come into a courtroom" (Ex. 15 at AA-122), the prosecutors specifically highlighted the defense's inability to call their credibility into question or to suggest a motive for them to kill Mr. Bowman or to falsely implicate Mr. Searcy. (Ex. 15 at AA-147-48; 160-61.) This effectively bolstered Brooks and Johnson's credibility, while compounding the prejudicial effect of the court's erroneous and unconstitutional preclusion of the cross-examination sought by Mr. Searcy. Because of the court's error, Mr. Searcy was left with no effective rebuttal to the State's paean to Brooks' and Johnson's credibility.

## III.    THE CONFRONTATION CLAUSE VIOLATION WAS NOT HARMLESS.

On collateral attack, the wrongful curtailment a defendant's cross-examination of a government witness for bias is deemed harmless unless it had "a substantial and injurious effect or influence in determining the jury's verdict." *Splunge*, 160 F.3d at 375 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)). *Id.* Under this standard, "if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected," and therefore that the error was harmless. *Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946). In other words, if after reviewing the record the court is in "grave doubt about the likely effect of an error on the jury's verdict"—meaning that the court considers the matter so evenly balanced that it feels itself "in virtual equipoise as to the harmlessness of the error"—then the court must treat the error as if it had a substantial or injurious effect upon the verdict. *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995).

The unconstitutional denial of Mr. Searcy's right to cross-examine Brooks and Johnson to show a prototypical form of bias was not harmless. As noted, Brooks' and Johnson's testimony was indispensible to the prosecution's case. Necessarily, if the damaging potential of

defense counsel's cross-examination were realized, the testimony of the only two witnesses alleging that Mr. Searcy shot Mr. Bowman would be discredited, and the jurors would be more likely to believe Mills' version of events—that the State's witnesses had shot Mr. Bowman instead of Mr. Searcy.[9] *See Wilkerson*, 233 F.3d at 892 (holding that an improper restriction upon cross-examination of an alleged eyewitness was not harmless, and justified the granting of habeas relief, where "the prosecution's case hinged on [the witnesses'] supposed eyewitness account of the murder," and where the State's case would therefore be "seriously undermined" had the defense been allowed to inquire fully into the witness's motives and had the jury believed that the witness was biased toward the prosecution); *Cf. Redmond*, 240 F.3d 591-93. In addition, as noted, the prosecution compounded the prejudice when it took advantage of the trial court's limitation on cross-examination by propping up Brooks' and Johnson's credibility in its closing argument through the inaccurate suggestion that they had withstood defense counsel's best efforts to show their motive to kill Mr. Bowman. (Ex. 15 at AA-147-48.) Thus, in addition to prejudicially impairing Mr. Searcy's defense, the court's violation of Mr. Searcy's Confrontation Clause rights gave an artificial boost to the prosecution's case. *Cf. Davis*, 415 U.S. at 318 ("[o]n the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness"); *Van Arsdall*, 475 U.S. at 688 ("[h]aving survived what appeared to be counsel's best efforts to undermine

---

[9] It should be emphasized that Brooks' and Johnson's credibility might well have been damaged by Mr. Searcy's proposed cross-examination even if they had given the same responses before the jury that they gave during *voir dire*, because the jury could have concluded that their demeanor while testifying indicated a lack of truthfulness. This seems particularly likely in Brooks' case, as Brooks' became visibly agitated when defense counsel probed into his knowledge of Mr. Bowman's informant activities during *voir dire*. (Ex. 14 at A-10.)

the witness' credibility, [the witness'] testimony necessarily carried more weight with the jury")

(Marshall, J., dissenting).

The Appellate Court of Illinois, not having found a constitutional violation, did not

conduct a harmless error analysis. (Ex. 5 at 16-17.)[10] However, the prejudicial effect of the trial

court's error is plain enough for this Court to determine, on the record before it, that the error was

not harmless.

### CONCLUSION

For the foregoing reasons, Mr. Searcy's petition for a writ of habeas corpus should

be granted. Moreover, due to the complexity of the issues involved in this case, counsel respectfully

requests oral argument.

Respectfully submitted,

John F. Ward, Jr.
John R. Harrington
Steven J. Winger

JENNER & BLOCK, LLC
One IBM Plaza
Chicago, Illinois 60611
(312) 222-9350

*Counsel for Petitioner*

Dated: March 25, 2002

---

[10] The Seventh Circuit has noted that in post-AEDPA cases in which the state court has conducted a harmless error analysis it is an "open question" whether the federal court must apply the *Brecht* harmless error standard or some stricter standard on habeas review. *See Denny,* 252 F.3d at 905 n.4; *Anderson v. Cowan,* 227 F.3d 893, 898 n.3 (7th Cir. 2000). However, these cases are inapplicable here, because the state court did not conduct a harmless error analysis. Moreover, given the centrality of Brooks' and Johnson's credibility to the State's case, the total preclusion of cross-examination as to their bias cannot be considered harmless under any standard.

3

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

**PRISONER CASE**

# Civil Cover Sheet

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use <u>only</u> in the Northern District of Illinois.

**Plaintiff(s): Derrick Searcy**

County of Residence: 17095

Plaintiff's Atty:      John F. Ward, Jr.
                       Jenner & Block
                       One IBM Plaza, Chicago, IL
                       60611
                       see attachment

**Defendant(s):Mark A. Pierson, Warden, Hill Correctional Center**

County of Residence: 17095

Defendant's Atty:

*DOCKETED*
*MAR 26 2002*

**02C 2164**

ATTORNEY GENERAL
Criminal Appeals Div.
100 W. Randolph St.
Chicago, IL 60601

II. Basis of Jurisdiction:      **3. Federal Question (U.S. not a party)**

**JUDGE GETTLEMAN**

III. Citizenship of Principal
Parties **(Diversity Cases Only)**

                       Plaintiff:- **N/A**

                       Defendant:- **N/A**

**MAGISTRATE JUDGE NOLAN**

IV. Origin :                    **1. Original Proceeding**

V. Nature of Suit:              **530 Habeas Corpus General**

VI.Cause of Action:             **28: 2254 (state) Petition for Habeas Corpus**

VII. Requested in Complaint
          Class Action: **No**
          Dollar Demand:
          Jury Demand: **No**

VIII. This case **IS NOT** a refiling of a previously dismissed case.

FILED-EDS
02 MAR 25 PM 3: 22
CLERK
U.S. DISTRICT COURT

**Signature:** John F. Ward

**Date:** 3/25/02

If any of this information is incorrect, please go back to the Civil Cover Sheet Input form using the *Back* button in your browser and change it. Once correct, print this form, sign and date it and submit it with your new civil action. **Note: You may need to adjust the font size in your browser display to make the form print properly.**      Revised: 06/28/00

**DOCKETED**
MAR 2 6 2002

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
### Eastern Division

In the Matter of

United States of America ex rel. Derrick Searcy v.
Mark A. Pierson, Warden, Hill Correctional Center

Case Number **02C  2164**

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Derrick Searcy

JUDGE GETTLEMAN

MAGISTRATE JUDGE NOLAN

| (A) | (B) |
|---|---|
| SIGNATURE *John F. Ward* | SIGNATURE |
| NAME John F. Ward, Jr. | NAME John R. Harrington |
| FIRM Jenner & Block | FIRM Same as A |
| STREET ADDRESS One IBM Plaza | STREET ADDRESS |
| CITY/STATE/ZIP Chicago, IL 60611 | CITY/STATE/ZIP |
| TELEPHONE NUMBER (312) 222-9350 | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6208004 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6229409 |
| MEMBER OF TRIAL BAR?  YES ✔  NO ☐ | MEMBER OF TRIAL BAR?  YES ☐  NO ✔ |
| TRIAL ATTORNEY?  YES ✔  NO ☐ | TRIAL ATTORNEY?  YES ☐  NO ✔ |
| | DESIGNATED AS LOCAL COUNSEL?  YES ☐  NO ✔ |
| (C) | (D) |
| SIGNATURE | SIGNATURE |
| NAME Steven J. Winger | NAME |
| FIRM Same as A | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6273332 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR?  YES ☐  NO ✔ | MEMBER OF TRIAL BAR?  YES ☐  NO ☐ |
| TRIAL ATTORNEY?  YES ☐  NO ✔ | TRIAL ATTORNEY?  YES ☐  NO ☐ |
| DESIGNATED AS LOCAL COUNSEL?  YES ☐  NO ✔ | DESIGNATED AS LOCAL COUNSEL?  YES ☐  NO ☐ |

FILED 02 MAR 25 PM 3:22 CLERK U.S. DISTRICT COURT