Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 2164 | DATE | Oct. 15, 2002 |
| CASE TITLE | US ex rel DERRICK SEARCY    v    MARK A. PIERSON, Warden | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .
(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(7) ☐ Trial[set for/re-set for] on _____ at _____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]

Memorandum opinion and order entered. Accordingly, petitioner's application for writ of habeas corpus is **granted** and petitioner is to be released from custody unless the State of Illinois retries him, within 90 days of this decision.

(11) ☐ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| X | Notices mailed by judge's staff. | | OCT 1 8 2002 date docketed | |
| | Notified counsel by telephone. | | | 27 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel., DERRICK SEARCY, </br></br>Petitioner, </br></br>v. </br></br>MARK A. PIERSON, Warden, Hill Correctional Center, </br></br>Respondent. | No. 02 C 2164 </br></br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

In 1998, petitioner Derrick Searcy was convicted of first degree murder in the Circuit Court of Cook County and sentenced to forty-two years in prison. After an unsuccessful direct appeal, petitioner filed a writ of habeas corpus in this court pursuant to 28 U.S.C. § 2254. For the reasons stated below, the petition is granted.

## FACTS[1]

At petitioner's trial for the murder of Edward Bowman, the prosecution presented two occurrence witnesses, both of whom placed petitioner at the scene of the crime. The first witness, Clarence "Lakefront" Johnson, testified that on the afternoon of June 6, 1994, he saw petitioner wearing a bulletproof vest and holding a gun in each hand. According to Johnson, petitioner threatened Bowman several times and then struck him on the left side of his head. Later that afternoon, at petitioner's house, Johnson (along with Michael "Country" Brooks, the

---

[1] This recitation of the facts is drawn principally from the Illinois Appellate Court's ruling on petitioner's direct appeal, People v. Derrick Searcy, No. 1-98-2406 (Ill.App.Ct. August 2, 2000), which is presumed correct. Mahaffey v. Schomig, 294 F.3d 907, 915 (7th Cir. 2002).

second occurrence witness for the prosecution, and an individual named Dominique who did not testify) witnessed another scuffle between petitioner and Bowman during which Bowman struck petitioner. At this point, petitioner drew a gun from his shoe and chased Bowman to an alley adjacent to petitioner's backyard, firing two shots in his direction. According to Johnson, the alley and backyard were separated by a fence approximately five feet high. Johnson then heard five more shots, and subsequently found Bowman lying in the alley, with Brooks looking towards Bowman. Although Johnson did not tell the police on the scene that he knew petitioner had shot Bowman, he did relay that information to Bowman's son, Marlonn Boyd, in a phone call shortly after the shooting. Johnson further testified that he was convicted of theft in 1988 and denied selling drugs at the time of the shooting.

Brooks testified similarly to Johnson regarding the altercation on petitioner's porch. According to Brooks, petitioner repeatedly threatened to kill Bowman. Brooks also stated that he saw petitioner chase Bowman behind the house, and subsequently heard two shots, followed by five more shots in quick succession.

Brooks was the first to arrive at the alley after the shooting. According to Brooks, when he arrived in the alley after Bowman had been shot, Bowman told him, "Uhh, I'm not going to make it." Although Brooks did tell detectives about the earlier confrontation during which petitioner struck Bowman, he did not tell them that he saw the shooting. Like Johnson, Brooks also told Boyd that petitioner had shot his father. Brooks further testified that he was convicted of marijuana possession in 1996, but was not selling drugs at the time of the shooting.

Chicago police detective Hugh Conwell testified for the state that Bowman's feet were next to a fence and his head was pointed in the direction of the middle of the alley. Dr. Nancy

Jones, a medical examiner who conducted an autopsy on Bowman, testified for the state that he had been shot six times in the face. She stated that the fourth shot, which lacerated Bowman's brain stem, likely caused instantaneous death (in contrast to the other five shots, which would not have incapacitated him immediately). She testified that the six shots were consistent with Bowman being chased, being shot at and struck on the side of his head, running a distance or climbing a fence and then falling backwards, with the killer then standing over him and emptying the gun. Moreover, although Dr. Jones did observe a small scratch on the back of Bowman's head, she did not detect any bleeding under his scalp that would have resulted from a blow to the head.

Marlonn Boyd, the victim's son, testified that he received a phone call from Johnson at 1 p.m. on June 6, 1994, telling him that petitioner had shot his father. The trial court advised the jury that this evidence was hearsay, and not to be considered for the truth of the matter stated.

Janet Searcy, petitioner's former wife, testified that, on the day of the shooting, the backyard and front of petitioner's house were separated by a gate that was always padlocked, making it impossible to proceed to the backyard without going over the fence. She further stated that the fence between the backyard and the alley was six feet high, and was shown a State exhibit that she testified was a photo of the alley that ran behind petitioner's house.

John Rea, an investigator retained by petitioner, testified that Marlonn Boyd informed him that Johnson, Brooks and Bowman sold drugs in 1994. On cross-examination, Rea testified that Polaroid photos (taken during trial) shown to him by the State accurately depicted the houses adjoining the alley behind petitioner's house as he observed them. After the close of the evidence, these Polaroid photos were admitted into evidence and submitted to the jury during

deliberations, despite petitioner's prior sustained objection that there was no competent evidence of what petitioner's house might have looked like in June 1994.

Dr. Daniel Wynn, an expert neurologist, testified for the petitioner that the fourth gunshot, which lacerated the victim's brain stem, would have killed him instantly. Moreover, Dr. Wynn testified that the sixth shot would have brought the victim down, and that it was unlikely that Bowman could have run or jumped fences after sustaining such a gunshot wound. Dr. Wynn was permitted to testify only after making a written copy of his testimony available to the State, which the petitioner and Dr. Wynn had approximately twenty-four hours to prepare.

Tonita Mills testified for the petitioner that on the day of the shooting, she saw Brooks and an older man arguing in the alley behind petitioner's house. About two minutes later, after she had started to walk away, she heard gunshots. She subsequently saw a car drive by, with Johnson in it. She also saw the victim. She did not tell the police that day what she had seen. Ms. Mills further testified that she had been convicted of forgery and theft.

Petitioner's theory of the case was that the state's two occurrence witnesses, Brooks and Johnson, murdered Bowman and falsely accused petitioner to draw suspicion away from themselves.[2] According to the affidavit of Chicago Police Officer Donald Washington which was proffered by petitioner, Washington and another officer arrested Bowman on a narcotics charge in February 1994, approximately three months before his murder. In the course of his arrest, Bowman told the arresting officers that Brooks was a drug dealer and they "got the wrong

---

[2]Petitioner also sought to cross-examine Brooks and Johnson about their rumored membership in a gang that sold narcotics in competition with Bowman. The trial court's refusal to allow cross-examination regarding gang membership was raised on direct appeal, and the Illinois Court of Appeals concluded that petitioner failed to provide an adequate factual predicate for such cross-examination. Petitioner did not raise this issue in his habeas petition in this court.

guy." At the time Bowman implicated Brooks, Johnson's neighbor, Clinton Boyd, was in the apartment and close enough to have heard Bowman's statement. After the arrest, the officers began to work out a deal in which Bowman would inform against Brooks. Bowman was killed before the arrangement was finalized, however.

Before trial, the State had moved <u>in limine</u> to prevent the defense from presenting evidence or cross-examining Brooks and Johnson regarding Bowman becoming an informant against Brooks. At sidebar, the State did not dispute the veracity of petitioner's proffer of Officer Washington's testimony regarding Bowman's plans to inform against Brooks. Nonetheless, the trial court orally ruled that petitioner could not cross-examine on the informant issue, unless he could show that Brooks or Johnson knew that the victim was informing on them in their alleged drug activities. To this end, the trial court permitted petitioner to voir dire Brooks and Johnson regarding their knowledge of Bowman's informant activities, outside the presence of the jury.[3]

---

[3]The relevant portion of the sidebar proceeded as follows:
Trial judge:[C]ould you prove, by competent evidence at trial, that Clinton told Country [Brooks] that Bowman threw his name in as the owner, possessor, or a drug dealer?
Defense: I don't think I can make that proof at this point, your Honor, but I do not think that your Honor can hold that against us. It goes to the weight of the statement, not its admissibility. There is [Officer Washington] who is capable of making the statement. The defense is not obligated to disprove this. It clearly relates to Country's motive to kill this fellow, and we've got a clear connection –
Trial judge: Country has to know about it. To develop his motive to want to kill [Bowman], he has to know the victim, Bowman, is informing on him.
Defense: I think we are entitled to let the jury make that decision.
[...]
Trial judge: I think the linchpin of this issue, of this situation is, did Country, or Brooks, know even if he – or was he informed, incorrectly, that the deceased was informing about him?
Defense: I don't think we can trust Country to give us an accurate answer in this case, your Honor.
Trial judge: Then I think you have to do it in some other competent way.
Defense: Your Honor, it's very difficult to prove, for us to go out and prove [Brooks'] guilt.

(continued...)

On voir dire, Johnson testified that he knew Bowman, but had never had a conversation with his neighbor, Clinton Boyd, about Bowman's arrest. From February 1994 to June 1994, the only conversations he had with Boyd were "maybe hello and goodbye." He stated that no one ever told him that Bowman informed on Brooks.

Brooks similarly testified that he knew Bowman, though denied knowing that Bowman sold drugs. According to Brooks' testimony, he did not know that Bowman was arrested in February 1994, or that Bowman was a police informant against him.[4] Following Brooks' and Johnson's voir dire testimony, the judge would not permit petitioner to cross-examine Brooks and Johnson regarding their knowledge of the victim's work as an informant against Brooks.

During its closing arguments, the prosecution made the following statement:

[H]ow does [Mills' story] support [the defense's] theory? Where is Country and Lakefront's motive? We have all these little shadowy insinuations, all these speculations about drugs.... How does that tie into Country and Lakefront? They want you to believe Country and Lakefront were killers, all over some dope things. There is no evidence, folks.... It's completely unreasonable that somebody wanting to frame somebody would then wait a year to come forward, not to mention their demeanor while they testify."

---

[3](...continued)
We're entitled to inference that the jury can make that decision.
Trial judge: That's where I disagree. I think you can't do that. What then happens is that we get into insinuations and innuendos, and no fair, logical inferences.
[...]
Trial judge: In terms of the informant issue, though, I think it's perfectly clear... that since you have not established that you can show Brooks or Johnson knew that if it is or was true, that Bowman was informing on them in their alleged drug activities, I am going to preclude you from entering into that area. I will, if you want, before Brooks and Johnson testify, let you ask them under oath in cross-examination type questions, if he was aware of that, and if he says yes, I was, then I immediately will allow you to go into that.

[4]During Brooks' voir dire testimony, he became agitated, prompting the judge to instruct him to "restrain yourself" and "remain calm."

6

At various points throughout closing arguments, the State referred to Brooks and Country as "excellent witnesses" and "two of the most credible people that will ever come into a courtroom," and further implied that they were "heroes" for coming forward and testifying against petitioner.

On direct appeal, petitioner argued that the court's refusal to allow him to cross-examine Johnson and Brooks regarding Bowman's work as an informant, and to explore their potential bias and motives to testify falsely against petitioner, violated his Sixth and Fourteenth Amendment right to confront the witnesses against him.[5] In affirming the trial court, the appellate court concluded:

> It was speculative whether Clinton Boyd overheard Bowman's statements about Brooks. [Officer] Washington's affidavit did not state that Clinton Boyd was in the same room or that he overheard the statements. Defendant argues that Johnson lived near Clinton Boyd and had conversations with him between the time of the victim's arrest and death. However Johnson testified outside the presence of the jury that during that time period he had no substantive conversations with Clinton Boyd. Therefore, it was conjectural whether Brooks or Johnson knew what Bowman stated to the police or that he was becoming an informant. Without such evidence, it was not error to refuse to allow defendant to present the police officer's testimony or to cross-examine Brooks and Johnson on these matters. Mills's testimony that she saw Brooks argue with the victim shortly before she heard gunshots did not make less speculative the evidence that Brooks or Johnson knew that Bowman was willing to inform on them.

In his habeas petition, petitioner claims that the appellate court's affirmance of the trial court's rulings regarding the cross-examination of Brooks and Johnson is contrary to, or involves an unreasonable application of, Supreme Court precedent, entitling him to relief under 28 U.S.C. § 2254.

---

[5]Petitioner also raised a number of issues in his direct appeal that he does not raise in his habeas petition.

7

## ANALYSIS

28 U.S.C. § 2254 empowers a district court to entertain an application for a writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." See also Wainwright v. Goode, 464 U.S. 78, 84, 104 S.Ct. 378, 382 (1983). In considering a habeas corpus petition filed by a state prisoner challenging his conviction or sentence on legal grounds, federal courts are guided by 28 U.S.C. § 2254(d)(1), which provides that the writ of habeas corpus may only be granted if the adjudication of the prisoner's claims in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[6]

In Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523 (2000), the Supreme Court defined "clearly established Federal law" as "holdings, as opposed to the dicta" of Supreme Court decisions at the time of the state court decision, and further clarified the meaning of "contrary to" and "unreasonable application" as used in § 2254(d)(1). For a decision to be "contrary to" clearly established Federal law, it must be "substantially different" from the relevant Supreme Court precedent. Williams, 529 U.S. at 405, 120 S.Ct. at 1519 (2000); Boss v. Pierce, 263 F.3d 734, 739 (7th Cir. 2001). This situation may arise in two ways: (1) if the state court applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) if the state court confronts a set of facts that are materially indistinguishable from a decision of the

---

[6] A petitioner may also challenge the state court's factual determinations under § 2254(d)(2).

Supreme Court and nonetheless arrives at a different result. Williams, 529 U.S. at 405-406, 120 S.Ct. at 1519-1520.

On the other hand, a decision involves an "unreasonable application of" clearly established law when the state court identifies the correct legal rule but applies it unreasonably. Id. at 409-410, 120 S.Ct. at 1521. An unreasonable application of the law is distinguishable from an incorrect application of law, however. To fall under this exception, the state court's application of Supreme Court precedent "must be so erroneous as to be unreasonable." Boss, 263 F.3d at 739.

Petitioner contends that by preventing him from cross-examining the State's key witnesses, Johnson and Brooks, about matters tending to establish their bias and motive to testify falsely, the Illinois trial and appellate courts arrived at a decision that is "contrary to" the holding of Alford v. United States, 282 U.S. 687, 51 S.Ct. 218 (1931), and an "unreasonable application of" Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105 (1974), Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431 (1986), and Olden v. Kentucky, 488 U.S. 227, 109 S.Ct. 480 (1988). In its answer to the instant petition, the State characterizes petitioner's claims as state law evidentiary claims that are not cognizable by the federal courts under § 2254, and further asserts that the decisions of the trial and appellate did not contravene Supreme Court precedent. For the reasons discussed below, the court concludes that petitioner's claims are cognizable under § 2254, and grants the petition on the grounds that the state court rulings involved an unreasonable application of federal law.

Petitioner asserts that his confinement is in violation of the federal constitution, and thus reviewable under § 2254, because the trial court violated his Sixth Amendment right to confront

9

the witnesses against him. In response, the State urges the court to construe petitioner's claims as state law evidentiary claims, which are not cognizable in federal actions seeking habeas relief.

The State contends that the trial court exercised its discretion in excluding the evidence because it was speculative, and that petitioner has invoked the Confrontation Clause in his habeas petition merely to circumvent this evidentiary ruling. According to the State, the Confrontation Clause is not implicated in the instant case because petitioner did not establish the threshold evidence of motive or bias, specifically that Brooks or Johnson knew that Bowman was informing against Brooks. The State asserts, therefore, that the trial court's decision to deny cross-examination is properly characterized as an evidentiary ruling, "notwithstanding Petitioner's use of constitutionally charged phraseology and the appellate court's mention of the phrase 'Confrontation Clause.'"

The State is correct in arguing that a federal habeas court is not the proper forum for adjudicating disagreements with respect to state court rulings on state law. See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States."); Cramer v. Fahner, 683 F.2d 1376, 1385 (7th Cir. 1982) ("It is not the role of a federal habeas court to correct state court errors; the state's administration should not be interfered with unless a federal right is violated.").

When a habeas petitioner alleges that a state evidentiary ruling violates the Sixth Amendment Confrontation Clause, however, a federal district court may properly review that ruling. Clark v. O'Leary, 852 F.2d 999, 1005 (7th Cir. 1988). See also Redmond v. Kingston,

240 F.3d 590, 591 (7th Cir. 2001) (granting habeas relief when petitioner's cross-examination was erroneously limited at trial on the basis of state's rape shield law, in contravention of the Sixth Amendment); Cramer, 683 F.2d at 1385 (acknowledging that writ of habeas corpus may issue for an erroneous evidentiary ruling when a specific constitutional guarantee has been violated or the error is of such magnitude that the result is a denial of fundamental fairness).

The court recognizes that the trial court's limitation on petitioner's cross-examination regarding the potential bias of Johnson and Brooks was arguably based on state law. Nonetheless, abundant precedent dictates the conclusion that petitioner's Sixth Amendment right of confrontation has indeed been implicated in the instant case. See, e.g., Davis, 415 U.S. at 316, 94 S.Ct. at 1110 ("We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."). The court thus finds that petitioner's claim regarding the trial court's limitation on his cross-examination of Johnson and Brooks regarding their motive to testify falsely is cognizable under § 2254.

Having concluded that petitioner's claim is reviewable under § 2254, the court must next determine whether the trial court's ruling contravenes the Supreme Court's Sixth Amendment jurisprudence. For the reasons set forth below, the court finds that habeas relief is merited in the instant case.

In Alford v. United States, 282 U.S. 687, 694, 51 S.Ct. 218, 220 (1931), the Supreme Court found the trial court abused its discretion by restricting exploratory cross-examination regarding the residence of a prosecution witness whom defendant alleged was in federal custody and thus motivated to testify against him. In reversing the lower court, the Court explained, "It is

the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what fact a reasonable cross-examination might develop." Id. at 692.

The Supreme Court identified two bases for allowing the proposed cross-examination in Alford. First, the Court noted, "The question, 'Where do you live?' was not only an appropriate preliminary to the cross-examination of the witness, but on its face, without any such declaration of purpose as was made by counsel here, was an essential step in identifying the witness with his environment, to which cross-examination may always be directed." Id. at 693. Second, the petitioner was "entitled to show by cross examination that his testimony was affected by fear or favor growing out of his detention." Id.

Petitioner in the instant case contends that Alford establishes a constitutional rule that "a defendant's right to cross-examine a witness for bias may not be conditioned upon the defense's ability to prove its theory of bias in advance." The court recognizes a defendant's constitutional right to conduct exploratory cross-examination of prosecution witnesses for bias, but notes that the contours of that right are subject to the discretion of the trial judge. Indeed, in Alford, the Court emphasized that "[t]he extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court." Id. at 694.

Moreover, as the State emphasizes, in cases decided after Alford, the Supreme Court elaborated on the trial court's discretion to limit cross-examination. In Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435 (1986), the Court explained:

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice,

12

confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.

See also Delaware v. Fensterer, 474 U.S. 15, 20, 106 S.Ct. 292, 295 (1985) ("[T]he Confrontation Clause guarantees an <u>opportunity</u> for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.") (emphasis in original).

Lower federal courts have interpreted this line of Supreme Court precedent to justify limiting cross-examination that lacks proper foundation. See, e.g., Reddick v. Haws, 120 F.3d 714, 717 (7th Cir. 1997); United States v. Lin, 101 F.3d 760, 767-768 (D.C. Cir. 1997). Federal courts of appeals have also invoked the broad discretion afforded a trial judge to uphold prohibitions on cross-examination that is unduly speculative. See United States v. Lo, 231 F.3d 471, 482-483 (9th Cir. 2000); Bui v. DiPaolo, 170 F.3d 232, 242-246 (1st Cir. 1999).

This discretion is not boundless, however, and any limits imposed by trial judges must be considered in light of the particular witness being cross-examined and the extent to which the cross-examination has been curtailed. Indeed, when cross-examination of the prosecution's key witness for bias or motive is truncated, or prohibited altogether, a defendant's right to cross-examination becomes far more salient. See, e.g., Davis, 415 U.S. at 317, 94 S.Ct. at 1111 (where accuracy and truthfulness of witness' testimony were "key elements in the State's case against [defendant]," trial court's refusal to allow defendant to cross-examine key prosecution witness regarding bias and prejudice violated his Sixth Amendment rights); Wilkerson v. Cain, 233 F.3d 886, 891 (5th Cir. 2000) ("the imperative of protecting a defendant's right to effective cross-examination is even more critical where, as here, the witness is crucial to the prosecution's

case"); United States v. Foster, 986 F.2d 541, 543 (D.C. Cir. 1993) ("The more important the witness to the government's case, the more important the defendant's right, derived from the Confrontation Clause of the Sixth Amendment, to cross-examine the witness.").

Moreover, the extent to which cross-examination has been curtailed is also pertinent to analyzing a trial judge's exercise of discretion. Delaware v. Van Arsdall, 475 U.S. at 679, 106 S.Ct. at 1436 (finding a Sixth Amendment violation when the trial court "prohibited all inquiry into the possibility that [the witness] would be biased as a result of the State's dismissal of his pending public drunkenness charge")(emphasis in original); Wilkerson, 233 F.3d at 890 ("Although the scope of cross-examination is within the discretion of the trial court, and, as such, it may impose reasonable limits on defense counsel's inquiry, 'that discretionary authority comes about only after sufficient cross-examination has been granted to satisfy the Sixth Amendment.'") (citation omitted). Thus, a reviewing court must consider whether the jury had enough information at trial to make a discriminating appraisal of the witness' motives and bias. See United States v. Rodgers, 755 F.2d 533, 548 (7th Cir. 1985), citing United States v. DeGudino, 722 F.2d 1351, 1354 (7th Cir. 1983).

As the preceding discussion suggests, Confrontation Clause violations do not lend themselves to simple, straightforward analysis, but rather involve a balancing of many factors. Nonetheless, in the instant case, a review of the appellate court's opinion compels the conclusion that the appellate court unreasonably applied federal law in denying petitioner's appeal. Although the appellate court acknowledged the Confrontation Clause issue at stake, and appropriately cited to state authority which in turn cited to the appropriate federal precedent, the court finds that its analysis was so erroneous as to be unreasonable.

According to the appellate court, "The confrontation clause guarantees the opportunity for effective cross-examination. People v. Harris, 262 Ill.App.3d 35, 47, 634 N.E.2d 318 (1994). However, testimony under cross-examination may be excluded as irrelevant if is remote, uncertain or conjectural. People v. Parchman, 302 Ill. App. 3d 627, 637, 707 N.E.2d 88 (1988)." This analysis, however, entirely overlooks the centrality of Brooks' and Johnson's testimony to the prosecution's case, as well as the fact that the trial judge precluded <u>all</u> cross-examination on the issue of bias or motive before the jury. Although the trial judge did permit limited voir dire outside the presence of the jury, this cannot satisfy the requirements of Alford, Davis, Van Arsdall, and Olden, because the trial judge refused to allow the jury to be exposed to the petitioner's theory of motive and bias and to draw its own informed conclusions regarding credibility of the State's key witnesses. Indeed, at the very least, the jury was entitled to observe the witness' demeanor when confronted with questions regarding whether Clinton Boyd had indicated that Bowman was informing against Brooks. See Henry v. Speckard, 22 F.3d 1209, 1215 (2d Cir. 1994) (explaining that "the witness may well answer bias-probing questions in the negative; but the matter of whether her answers should be believed or disbelieved is within the sole province of the jury.").

The court recognizes and appreciates a trial judge's discretion to exclude speculative or conjectural evidence on relevance grounds. Nonetheless, the court concludes that the trial and appellate courts' decisions in this case cannot be reconciled with the abundant precedent that protects a defendant's constitutional right to probe bias and motive of prosecution witnesses in its cross-examination before the jury. See, e.g., Davis, 415 U.S. at 316, 94 S.Ct. at 1110 ("The partiality of a witness is subject to exploration at trial, and is '<u>always relevant</u> as discrediting the

15

witness and affecting the weight of his testimony.'")(citations omitted, emphasis added); Redmond v. Kingston, 240 F.3d 590, 593 (7th Cir. 2001) ("'While generally applicable evidentiary rules limit inquiry into specific instances of conduct through the use of extrinsic evidence and through cross-examination with respect to general credibility attacks, ... no such limit applies to credibility attacks based upon motive or bias.'") (quoting Quinn v. Hayes, 234 F.3d 837, 845 (4th Cir. 2000)). Given the theory of bias and motive at stake, the centrality of Brooks' and Johnson's testimony to the prosecution, and defendant's good faith factual predicate, the court concludes that the state trial and appellate courts unreasonably applied federal law in the instant case.

Having concluded that a Confrontation Clause violation occurred, the court must determine whether the trial court's curtailment of cross-examination was harmless. On collateral review of a state court conviction, a constitutional error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 638 (1993); Splunge v. Parke, 160 F.3d 369, 376 (7th Cir. 1998).

The state maintains that any constitutional error in the instant case was harmless, based on the fact that Brooks and Johnson denied having any knowledge of Bowman's work as an informant. This argument is not persuasive, however, especially when considered in light of the prosecution's closing arguments, which drew attention to petitioner's inability to introduce his theory of bias and motive to the jury. By emphasizing Tonita Mills' testimony, in which she placed Johnson and Brooks near the scene of the crime, and petitioner's subsequent failure to provide a motive for Brooks or Johnson to murder the victim, the prosecution left the jury to

16

speculate as to why the State's witnesses would lie and essentially diluted the effects of the defense's general impeachment evidence.

The jury was completely deprived of an opportunity to observe the demeanor of Johnson and Brooks when questioned about the petitioner's theory of motive and bias. Nonetheless, the prosecution's closing arguments described Brooks and Johnson as "excellent witnesses," notwithstanding the fact that on voir dire Brooks had become disorderly and was instructed by the trial judge to restrain himself and "remain calm." Such behavior on cross-examination certainly could have led the jury to conclude that Brooks' denials of knowledge of Bowman's agreement to be an informant were not credible.

Officer Washington's proffered testimony, the veracity of which has not been called into question by the State, provided a sufficient factual predicate to support the theory that Brooks knew the victim had told the police about Brooks' drug activities. In addition, Tonita Mills' testimony put Brooks and Johnson near the scene of the crime. By precluding petitioner from exploring the evidence supporting his theory that Brooks and Johnson may be the actual killers, the trial court prevented the jury from making a fully informed assessment of the credibility of the State's key witnesses. Taken together with the paucity of physical evidence tying petitioner to the crime, as well as the autopsy evidence contradicting both Brooks' testimony about the victim's purported dying declaration and Johnson's testimony that petitioner had struck the victim in the head the same day as the murder, the court concludes that the violation of petitioner's Sixth Amendment rights was not harmless. To the contrary, by precluding the defense from cross-examining the State's key witnesses about their biases and motives, the trial court's ruling constituted a clear violation of the Confrontation Clause that severely prejudiced

17

petitioner. Davis, 415 U.S. 308, 94 S.Ct. 1105; Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431; Redmond, 240 F.3d 590 (7th Cir. 2001).

## CONCLUSION

For the reasons set forth above, the court grants petitioner's application for writ of habeas corpus and directs that petitioner be released from custody unless the State of Illinois retries petitioner, consistent with the constitutional standards discussed above, within 90 days of this decision.

**ENTER:** October 15, 2002

_____
**Robert W. Gettleman**
**United States District Judge**